UNITED STATES & MEXICAN TRUST CO. et al. v. KANSAS CITY, M. & O.
RY. CO. et al.

In re VOLKER.

(District Court, D. Kansas, First Division.  February 26, 1917.)

No. 1262.

RAILROADS ⬤⟿195(1)—FORECLOSURE SALE—PAYMENT OF PURCHASE PRICE—IN-
TEREST.

Where a railroad in the hands of a receiver was sold under a decree of
foreclosure which provided that on the acceptance of a bid the bidder
should, within 10 days after the entry of an order directing such payment,
pay in cash to the special master the amounts necessary to pay the expens-
es of the receivership and certain other expenses therein enumerated and
to pay pro rata the bonds of bondholders who elected not to join in the
purchase, the amount of which payment could not be determined until
some time after the sale, so that the order for payment was not made
for more than two years, during which time no application for an order
for a cash payment was made by any one, the purchaser need not pay in-
terest on the bonds of nonparticipating bondholders between the date of
the sale and the time of its payment into court, though as a general rule
a judgment at law or decree in equity for the payment of money, which
makes no express provision regarding interest, bears interest at the legal
rate until paid.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 656, 658.]

In Equity.  Suit by the United States & Mexican Trust Company
and others against the Kansas City, Mexico & Orient Railway Com-
pany and others, for the appointment of a receiver and the foreclosure
of mortgage given to secure the bonds of the railway company.  On ap-
plication by William Volker as a bondholder for an order to require the
purchaser of the property to pay interest on the unpaid purchase price.
Application denied.

Krauthoff, McClintock & Quant, of Kansas City, Mo., for William
Volker.

John A. Eaton, Dudley W. Eaton, Hyden J. Eaton, Haff, Meservey,
German & Michaels and Lathrop, Morrow, Fox & Moore, all of Kan-
sas City, Mo., for Kansas City, M. & O. Ry. Co.

POLLOCK, District Judge.  The facts are, under the foreclosure
decree entered in this case, the railway property covered by the mort-
gage foreclosed was, on the 6th day of July, 1914, sold to a purchasing
committee of the bondholders desiring to participate in the purchase
of the property for the sum of $6,001,000.  Under the terms of the de-
cree the purchaser was obligated to pay out of the purchase money
underlying claims evidenced by receivers' certificates and notes, pref-
erential demands, etc., in the sum of more than $2,500,000.  Further,
under the form of the decree entered the first mortgage bonds on cer-
tain terms and conditions were applicable to the payment of the pur-
chase price.  Again, at the date of the sale there existed certain unde-
termined matters regarding the right to apply certain outstanding bonds
toward the payment of the purchase price and other disputed questions,

rendering the amount of cash required to be deposited to make good the bid uncertain and incapable of definite ascertainment. Hence it transpired the purchaser made no payment of cash into court required to complete the bid made until October 9, 1916, or for a period of more than two years after the sale was made and confirmed and possession of the railway property delivered to the purchaser. In this condition of the case one William Volker, the holder of five first mortgage bonds undeposited with the Bondholders' Committee, and on which he elects to take his pro rata share of the purchase price after deduction of the amount required to meet demands of a preferential nature, applies for an order requiring the purchaser of the property to pay interest on that portion of the purchase price payable to the holders of bonds not employed in making good the purchase money bid for the property. The matter stands submitted for decision.

Without in any manner controverting the correctness of the general proposition urged, that a judgment at law which in terms makes no provision for the payment of interest after its rendition bears interest at the legal rate until paid; or that a decree in equity, requiring the payment of a specifically named sum of money entered under like circumstances, bears interest in like manner; or that, as a usual thing, one who purchases and receives property sold under a foreclosure decree, but who fails or neglects to make payment of the purchase price to complete the bid in equity, should pay interest on the unpaid purchase money from the date of the sale until payment made; yet, under the form of the decree and the special facts of this case, I am of the opinion the order requested must be denied for the following reasons:

The decree in regard to the payment of the purchase price reads as follows:

"Upon the acceptance of any bid for lot A, the person or persons making the same shall, after the application thereto of any amounts theretofore deposited by him or them in cash, make payment in cash to the special master, within ten days after the entry of an order of the court directing such payment, of such amount as shall be necessary to pay and satisfy the costs of this cause and the allowances that shall be made to the complainant, the trust company, for its services and disbursements and the services and disbursements of its counsel, the unpaid services of the receivers and their counsel, and the sums which may be allowed by the court in this cause, if any, to any other party to this case, or its, his, or their solicitors, and any taxes which may be a lien upon the mortgaged premises; and such purchaser shall also, upon confirmation of the sale, deposit in such banks or trust companies as may be approved by the court the sum of $2,707,400, being the principal and interest to date of maturity of the outstanding receivers' certificates in the aggregate principal sum of $2,142,000, with interest thereon from January 1, 1914, to July 1, 1914, at 5 per cent. per annum, and receivers' notes heretofore executed by the receivers in the aggregate principal sum of $475,000, all maturing July 1, 1914, with interest thereon at 6 per cent. to maturity amounting to $36,850, such deposit to be evidenced by certificate of deposit to the order of the judge and clerk of this court or otherwise, as the court may direct, which amount shall be and constitute a trust fund for the payment of said receivers' certificates and said receivers' notes with interest thereon, respectively, at the maturity thereof; and upon the deposit of said sum of money as herein provided the lien of said receivers' certificates and of said receivers' notes shall be released and discharged as to the property to be sold hereunder as herein provided and shall attach to the said money so deposited for the benefit of the holders of said receivers' certificates and receivers' notes, and shall be used to pay, satisfy, and discharge said notes and certificates with interest thereon at the maturity

thereof, and shall be disbursed for that purpose upon the joint order of a judge of this court and the clerk thereof.

"In case any bidder or purchaser shall fail to make good his bid, upon its acceptance by the special master, by making any of the payments as hereinbefore provided in consummation of his purchase, then the sums paid or deposited by such bidder or purchaser shall be forfeited as a penalty for such failure, and shall be applied toward payment of the expenses of a resale and toward making good any deficiency or loss in case the property shall be sold at a less price upon such resale, and for any other or further purposes that the court may direct.

"Any of the complainants, or any holder or holders of said first mortgage bonds, may bid and purchase at any sale had under this decree. If any sale for which a deposit has been made shall not be confirmed by the court, such deposit shall be returned to the purchaser, and the deposit of any unsuccessful bidder shall be returned to him, when a bid other than that made by him has been accepted.

"The balance of the purchase price of lot A not hereinbefore required to be paid in cash may be paid either in cash, the purchaser may satisfy and make good the balance of his bid, in whole or in part, by turning in to be paid and canceled, or to have payment on account credited thereon, first mortgage bonds and coupons, and such purchaser shall be credited therefor on account of the purchase price with such sums in cash as would be payable on such bonds and coupons out of the proceeds of sale if the whole amount of the purchase price were paid in cash.

"The amount payable upon the acceptance of a bid for lot B shall be payable in cash, any moneys deposited to qualify the purchaser to bid being first applied thereon.

"Any deposit or payment required by the terms of this decree to be made in cash (other than the deposit to be made for the purpose of paying and discharging the outstanding receivers' certificates and receivers' notes, with interest thereon at maturity as provided in paragraph 19 hereof, which shall be made in the manner therein provided) may be made by the delivery of a certified check or checks, or certificate or certificates of deposit, upon or issued by any bank or trust company, in favor of or to the order of said special master and satisfactory to him.

"The special master may, in his discretion, accept, temporarily, instead of bonds and coupons, the certificate of Columbia-Knickerbocker Trust Company of New York, or of any other trust company which he may approve, that it holds first mortgage bonds or coupons issued under said first mortgage of the defendant railway company dated February 1, 1901, subject to the order of the special master, and will deliver them to him on demand for cancellation or other disposition, according to the terms of this decree.

"The court reserves the right to retake and resell the property, upon such notice as the court shall direct, in case the purchaser shall fail or omit to make any payment on account of the purchase price as hereinbefore required.

"Upon any sale made hereunder, the entire amount of the principal of said bonds secured by said first mortgage, to wit, the sum of $24,538,000, will become and be due and payable."

While there has been in this case very great delay in making payment, yet much of such delay was occasioned in working out the questions necessary to be determined before the cash required to make good the bid could be ascertained, and no order of the court was ever applied for or made under the terms of the decree ordering the purchaser to pay into court the cash necessary to complete the bid, which order became imperative, until the 9th day of October, 1916, at which time, in pursuance of an order made, there was a cash payment made on account until other matters then undisposed of could be determined. The failure to order cash payment under the terms of the decree to be paid in by the purchaser and user of the property arose from the failure of

those entitled to receive their pro rata share in cash to apply for such order. Whether there is as yet in the hands of the court an amount sufficient to make the cash payment required under the terms of the decree complete has not been determined. Hence, as at no time in the past the precise pro rata share the applicant and other nonparticipating bondholders similarly situated are entitled to demand and receive from the hands of the court could be determined or paid, I am of the opinion the demand for payment of interest thereon, when definitely ascertained, must be denied.

It is so ordered.